

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

| | |
|---|---|
| Brandon Reed, Erick Green, § <br> Yafeuh Balogun Shamsid-Deen, § <br> Stephen Benavides, Arthur Fleming, § <br> People's Assembly of Dallas, § <br> Commemoration Committee To Honor § <br> Roy Williams and Marvin E. Crenshaw, § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> Mike Rawlings, § <br> In His Official Capacity as Mayor of § <br> Dallas, and Scott Griggs, Adam § <br> Medrano, Casey Thomas II, Dwaine § <br> Caraway, Rickey Callahan, Omar § <br> Navaraez, Kevin Felder, Tennell Atkins, § <br> Mark Clayton, Adam McGough, Lee § <br> Kleinman, Sandy Greyson, Jennifer § <br> Gates, Philip Kingston, In Their Official <br> Capacities as Members of the Dallas <br> City Council, Defendants. | Civil Action No. <br> 3-18CV1032-B |

## PLAINTIFF'S ORIGINAL COMPLAINT
## AND APPLICATION FOR EMERGENCY INJUNCTIVE RELIEF

### A. PARTIES

1. Plaintiff Brandon Reed, is a citizen Dallas County, of the State of Texas, and is a member of the Commemoration Committee to Honor Roy Williams and Marvin E. Crenshaw.

2. Plaintiff Erick Green is a citizen of Dallas County, of the State of Texas, and a member of the Commemoration Committee to Honor Roy Williams and Marvin E. Crenshaw.

Plaintiff's Original Complaint and Request for Emergency Injunctive Relief 1

3. Plaintiff Yafeuh Balogun Shamsid-Deen, is a citizen of Dallas County, and the State of Texas, and a member of the People's Assembly of Dallas.

4. Plaintiff Stephen Benavides, is a citizen Dallas County, and of the State of Texas, and a member of the People's Assembly of Dallas.

5. Plaintiff, People's Assembly of Dallas, is a community based organization that works on public policy and building economic equity in Dallas. It is based in Dallas County.

6. Plaintiff, Commemoration Committee to Honor Roy Williams and Marvin E. Crenshaw, is a community organization actively working to rename Marilla St. to M. E. Crenshaw Blvd.

7. Defendant, Mike Rawlings, is an officer of the City of Dallas and is being sued in his official capacity, He may be served by serving the Office of the Mayor. Fed. R. Civ. P. 4(j)(2)(A)

8. Defendant, Scott Griggs, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

9. Defendant, Adam Medrano, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

10. Defendant, Casey Thomas, II, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

11. Defendant, Dwaine Caraway, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

12. Defendant, Rickey D. Callahan, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

13. Defendant, Omar Narvaez, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

14. Defendant, Kevin Felder, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

15. Defendant, Tennell Atkins, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

16. Defendant, Mark Clayton, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

17. Defendant, Adam McGough, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

18. Defendant, Lee Kleinman, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

19. Defendant, Sandy Grayson, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

20. Defendant, Jennifer S. Gates, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

21. Defendant, Philip T. Kingston, is an officer of the City of Dallas and is being sued in his official capacity He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

## B. JURISDICTION

22. The Court has jurisdiction over the lawsuit, because the suit arises under Amendments I and XIV, Sec. 1, of the U.S. Constitution. "Congress shall make no law... abridging the freedom of speech...Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." 28 U.S.C. § 1331. Gunn v Minton, 133 S. Ct. 1059, 1064 (2013); Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 552 (2005)

## C. VENUE

23. Venue is proper in this district under 28 U. S. C. § 1391(B)(2), because all of the events or omissions giving rise to this claim occurred in this district and because all of the property at issue is located in the district. Street names with a Confederate origin are located in this district, and defendants actions occurred and will occur in this district.

## D. FACTUAL BACKGROUND

24. Marilla Street was named by Confederate Chaplain William Ceiton Young ("Young"), a prominent 19th and 20th century minister and neo-Confederate in Dallas, for his mother Marilla Ingram Young.[1]

25. Young became a minister in 1849 of Methodist Episcopal Church South, the pro-slavery half of the Methodist church when the denomination broke up over slavery before the Civil War.[2]

26. In 1865 during the Civil War Young was assigned as a Missionary Chaplain to General W. L. Cabell's ("Cabell") Arkansas Confederate unit. After the Civil War ended, Young moved to Dallas, where he worked closely with Cabell on various anti-Reconstruction efforts.

27. Cabell committed numerous war crimes at during the 1864 Battle of Poison Springs in Arkansas. It was so notorious that African American Union regiments had a battle cry, "Remember Poison Springs". After the battle the 29th Texas Cavalry execution squads, led by Cabell, roamed the battlefield murdering wounded African American soldiers chanting "Where

---

[1] https://texashistory.unt.edu/ark:/67531/metapth20932/m1/959/?q=ingram%20young
[2] The Southern Methodist Church and the Proslavery Argument, Lewis M. Purifoy, The Journal of Southern History, Vol. 32, No. 3 (Aug., 1966), pp. 325-341

**Plaintiff's Original Complaint and Request for Emergency Injunctive Relief** 4

is the First Kansas N***** now? All cut up to pieces and gone to hell."[3] Some were scalped. The captured Union wagons were used in a contest to crush "n***** heads" under the wheels.[4]

28. Young was a member of the Sterling Price Camp No. 31 of the United Confederate Veterans and records show he was actively involved between 1894 and 1917 as leading member. [5]

29. The Sterling Price Camp was intimately involved in the erection of the Confederate War Memorial, currently being considered for removal by the Dallas City Council, whose dedication speeches stated that its purpose was to establish the Confederacy as a heroic self-sacrifice for states' rights ideology, which would be employed to prevent any civil rights legislation to protect African Americans.[6]

30. The construction of Dallas City Hall on Marilla St. was completed in December 1977.

31. The Mayor's Task Force on Confederate Monuments was created on August 18, 2017, and was charged with making recommendations on the Robert E. Lee and the Confederate Soldier Confederate Monument, Fair Park art, streets with Confederate names, places with Confederate names, Robert E. Lee Park, and the Confederate Cemetery.

32. On October 17, 2017, The Mayor's Task Force on Confederate Monuments issued street name recommendations seeking to change streets named after a Confederate leader and/or general, who made a significant contribution to the Confederacy, including specifically Gano, Lee, Cabell, Stonewall,and Beauregard streets. The renaming of these streets are to be accomplished on a priority basis within 90 days.

33. The Commemoration Committee to Honor Roy Williams and Marvin E. Crenshaw ("The Committee") was formed on February 1, 2018 to rename Marilla St. to M.E. Crenshaw Blvd, in order to recognize his contributions in expanding voting rights of all minorities in Dallas, and the creation of the 14-1 City Council system in Dallas.

34. Through historical research the Committee discovered that Marilla St. was named in honor of Dallas Confederate leader Young's mother, Marilla Ingram Young.

35. On April 11, 2018 during a Dallas City Council meeting, the Committee's research and public testimony was delivered to all Dallas City Council members and the Mayor, detailing

---

[3] Stockley, Grif, "Ruled by Race: Black/White Relations in Arkansas from Slavery to the Present," Univ. of Arkansas Press, 2009, page 53
[4] https://www.dallasnews.com/opinion/commentary/2017/09/22/cabell-elementary-needs-new-name-right-away
[5] Dallas Morning News, Sept. 14, 1894, page 8, in a short notice. "Sterling Price Camp."
[6] https://legacy.lib.utexas.edu/taro/dalpub/08708/dpub-08708.html

Young's history as a Confederate leader, specifically highlighting that Dallas City Hall is now located on Marilla St., and advocating for the change of Marilla St. to M. E. Crenshaw Blvd.

36. Between the formation of the Committee, and the date of this complaint, the Committee has, and continues to engage in political and community organizing throughout Dallas at the expense of its members time and financial resources. Those efforts include gathering petition signatures at public and private events, presenting at religious institutions, speaking before the Dallas City Council, and meeting and discussing matters with appointed and elected officials.

37. Tomorrow, April 25, 2018 at 9 a.m., the Dallas City Council will convene to consider the prohibition of renaming of streets linked to the Confederacy.

38. On April 25, 2018 at 9 a.m under agenda item No. 34(2), the Dallas City Council is considering the prohibition of renaming streets in Dallas named after Confederate Generals and/or leaders.
http://dallascityhall.com/government/Council%20Meeting%20Documents/agenda_042518.pdf

39. The April 25, 2018 Dallas City Council Agenda Resolution proposed under agenda item No. 34(2), does not specify whether only streets listed in the Mayor's Taskforce of Confederate Monuments Taskforce will be protected by the proposed resolution, or if all Confederate streets throughout the City of Dallas that fulfill the description provided, will also be prohibited from being renamed.

40. Tomorrow, April 25, 2018 at 9 a.m under agenda item No. 60, the Dallas City Council will convene to consider a public hearing to receive comments regarding a proposal to change the [street] name of Unnamed FN3, approximately 1,500 feet east of Coit Road between President George Bush Turnpike and Frankford Road to "Highland Springs Way"

41. The Dallas Development Code Art. IX, Thoroughfares, Section(s) 51A-9.300-9.308 provides a uniform process for changing a street name in Dallas.
http://www.dallascityattorney.com/51/ARTICLE%20IX.pdf

42. The street name change process is included under the Dallas' Thoroughfare Ordinance, which requires a public hearing and notice be given to property owners for any proposed amendments.
http://dallascityhall.com/departments/transportation/DCH%20Documents/Transportation_Planning/pdf/ThoroughfarePlan.pdf

43. Dallas Development Code Art. IX, Chapter 51A-9.304(c)(1), states that "Historic street names may not be changed." http://dallas-tx.elaws.us/code/coor_appsid838427_ch51a_artix_d51a-9.300_sec51a-9.304

44. None of the streets listed by the Mayor's Taskforce on Confederate Monuments, nor other streets, including Marilla St., whom fulfill the description provided by the Taskforce, have been subject to the process required to grant historic street status.

## CAUSES OF ACTION

### 1. VIOLATION OF FIRST AMENDMENT RIGHT TO FREE SPEECH BY USE OF CONTENT BASED PRIOR RESTRAINT

45. Article 1, Section 8, of the Texas Constitution and the First Amendment of the U. S. Constitution prohibits the abridgement of freedom of speech. In Texas v. Johnson (1984), the Supreme Court of the United States held that the public burning of the American flag at a political protest was a criminal act that:

> "*Expression may not be prohibited on the basis that an audience that takes serious offense to the expression may disturb the peace, since the Government cannot assume that every expression of a provocative idea will incite a riot, ubut must look to the actual circumstances surrounding the expression...The Government may not prohibit the verbal or nonverbal expression of an idea merely because society finds the offensive or disagreeable....*"

46. The State can have no interest in determining the message, or referent of political symbols. By naming the streets, in honor of oppressors of a large segment of the population, and the Plaintiff's in particular, and then by attempting to pass an ordinance prohibiting renaming, the City Government is engaging in actions that cause harm to the named Plaintiffs, and individuals, who have to repeat such speech.

47. If passed the resolution acts as ***content based unconstitutional prior restraint on free speech***. The resolution, which is widely expected to pass[7], chills the Plaintiffs political speech by disallowing any meaningful participation in the established process to rename a street. Omission of such rights is tantamount to official oppression, as the African American litigants have to speak and participate in a city which officially honors their historical oppressors.

48. The Committee, which consists of primarily African Americans and individually named plaintiffs, who are primarily African Americans, all have spent sufficient amount of time,

---

[7] http://www.dallasobserver.com/content/printView/10590794

monies, and sweat equity in organizing the issue of street name change. Their efforts are distinct from the general public because the general public has not spent the time or resources in organizing around the issue of renaming Marilla St. to M. E. Crenshaw Blvd, which makes the Plaintiff's injury and the future injury, distinct and particularized from the general public. Bray v. Fenves, No. 06-15-00075-CV, 2016 WL 3083539 (Tex. App.—Texarkana Mar. 24, 2016,

49. Prohibiting renaming of Confederate streets is not government speech. Monumental Task Comm., Inc. v. Foxx, 157 F. Supp. 3d 573, 594 (E.D. La. 2016), aff'd, 678 F. App'x 250 (5th Cir. 2017). The government is not taking down or putting up a monument/street, and Plaintiffs are not asking them to do either. Rather, Plaintiffs are engaging in an established political process, which includes real individual and organizational political activity. By prohibiting the renaming of confederate streets the government is not exercising government speech, it is abridging the Plaintiff's. Creating a protected class of streets for Confederate Generals/Leaders is not government speech. The streets were not constructed with the intent to convey a thought or instill a feeling by those who see them. The location and geographic significance of the streets are minimal, with the exception of Marilla St.

50. Marilla St. was not included in the Mayor's Taskforce on Confederate Monuments recommendations, and only became public knowledge that it was a Confederate street when the Committee presented the fact to the Dallas City Council on April 11, 2018. There is no mention of historic significance of any confederate streets in Dallas on the city's website.

## COUNT 2. VIOLATION OF DUE PROCESS RIGHTS

51. Renaming streets falls under the Dallas Thoroughfare Chapter, which *mandates* public hearing and notice before any amendment can be made to the Ordinance.[8] No public hearing specifically focused on prohibiting the renaming of confederate streets has occurred, in violation of the City of Dallas' Rules of Procedure.

*"The Plan serves a number of functions. It is the blueprint that established terminology, standards, and general principles, and guides decision making FOR ALL ASPECTS of roadway planning, funding, construction, reconstruction, operation, and maintenance."* Creating a protected class of streets falls under at least the operation and maintenance portion of this definition of the plan provided by the Thoroughfare Plan.

---

[8] http://dallascityhall.com/departments/transportation/DCH%20Documents/Transportation_Planning/pdf/ThoroughfarePlan.pdf

**Plaintiff's Original Complaint and Request for Emergency Injunctive Relief**　　　　　　　　**8**

52. Plaintiff's Due process claim is based on their liberty interest by denying their ability to engage in a well established uniform process for renaming streets. The City has no justifiable reason to ignore or violate its own well-established procedure for renaming streets. They have set this matter for a vote on Wednesday April 25, 2018.

## COUNT 3. VIOLATION OF EQUAL PROTECTION OF LAW

53. The City of Dallas clearly seems to be treating similarly situated people, i.e. the residents of the City of Dallas, differently, based on the street names they wish to have changed, or named. This is obvious from the fact that the same day the council is voting on agenda item #60, which is to hold a hearing to name a street, it is at the same time voting on #34 to prohibit the renaming of confederate streets. This is clearly an equal protection violation, as it discriminates between the residents with equal rights, based on the change they wish to affect.

## COUNT 4: REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION

54. In determining whether to grant or deny a preliminary injunction, the Court applies a four part test: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. Canal Authority of State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). "A preliminary injunction is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors." Allied Marketing Group, Inc. v. CDL Marketing, Inc., 878 F.2d 806, 809 (5th Cir. 1989) (citing Mississippi Power & Light v. United Gas Pipe Line, 760 F.2d 618, 621 (5th Cir. 1985); Apple Barrel Productions, Inc. v. Beard, 730 F.2d 384, 389 (5th Cir. 1984)).

55. Failure of the movant to establish any one of the four factors defeats the right to injunction. See Rohoe, Inc. v. Marque, 902 F.2d 356 (5th Cir. 1990). "[E]ven if the varying strengths and weaknesses of each of the four preliminary injunction factors may cross-compensate, this relationship has limits; the movant still must always 'present a prima facie case.'" Monumental Task Comm., Inc. v. Chao, 678 F. App'x 250, 252 n.1 (5th Cir. 2017) (quoting Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C., 710 F.3d 579, 582 (5th Cir. 2013)). "Such a showing is required, because 'it is inequitable to temporarily enjoin a party from undertaking activity which [that party] has a clear right to pursue.'" Id. (quoting Texas v. Seatrain Int'l, S. A., 518F.2d 175, 180 (5th Cir. 1975)). "We find that concern particularly

heightened when a federal court is asked to interfere with a state political sub-division's activity." Id.

A.   Plaintiff's have established that they have standing as African Americans and as members of a committee, also as residents of Dallas County and the City of Dallas they have a right to bring this action in order to force the City Council to follow the City's rules and procedures.

B.   Irreparable harm is imminent, due to the fact that if the city bars the renaming of the streets connected to the confederate figures, In a vote set for Wednesday April 25, 2018, the Plaintiff's will not be able to continue their mission to rectify the past mistakes of the city, and will have to suffer the consequences of constant reminders of the the awful and murderous legacy of the past, and will have to participate in a city scheme which forces them to take names of the streets that is clearly offensive and oppressive to them specifically.

Furthermore, the prior restraint on their free speech, and by the loss of time and money, spent to date in changing Marilla St., is being potentially sabotaged with a vote being taken in violation of the city's own well settled rules and procedures.

C. The injury to Plaintiffs is more permanent, as their First amendment rights will be chilled, due to the actions and they will continue to suffer harm by being forced to participate in scheme of city street names that is directly offensive to their rights, and amounts to official oppression. The City on the other hand will not be affected by any delay in their taking this vote.

Furthermore, this preliminary injunction will serve the public, as majority of the people in the city of Dallas, want rules and procedures to be followed by their elected officials, wish to participate in public hearings on important issues of the times-- and do not wish their first amendment rights to be violated.

### E.   JURY DEMAND

56.   Plaintiff respectfully demands a trial by jury and will tender the appropriate fee.

### F.   PRAYER

57.   For these reasons, Plaintiff asks that the court issue citations for Defendants to appear and answer, and issue a preliminary injunction, keeping the Defendants from holding a vote on this particular item tomorrow at Wednesday April 25, 2018, and set the matter for a permanent injunction hearing that Plaintiff be awarded a judgment against Defendant, for the following:

a. Actual damages;

b. Exemplary damages;

c. Attorneys' fees and expenses;

d. Court costs;

e. Prejudgment and post-judgment interest;

f. Temporary and permanent injunctive relief as requested herein; and

g. All other relief to which Plaintiff may be entitled at law or in equity.

RESPECTFULLY SUBMITTED

Dated: April 24, 2018

s/Shayan Elahi
Shayan Elahi, Esq.
State Bar No. 24080485
6565 N. MacArthur Blvd. Ste. 225
Las Colinas, TX 75039
Telephone No: (407)-902-5282
Facsimile No: (888) 633-8920
shayan@elahilawfirm.com

JS 44 (Rev. 06/17) - TXND (Rev. 06/17)

# CIVIL COVER SHEET

**RECEIVED**
APR 24 2018
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
BRANDON REED, ERIC GREEN, YEFEUH SHAMSID-DEEN, STEPHEN BENAVIDES

**(b)** County of Residence of First Listed Plaintiff: DALLAS
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
SHAYAN ELAHI, ESQ.
6565 N. MACARTHUR BLVD. STE 225, IRVING 75039

## DEFENDANTS
MIKE RAWLINGS, ADAM MEDRANO, CASEY THOMAS, RICKEY CALLAHAN, OMAR NARVAEZ et al.

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
3-18CV1032-B

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☑ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Brief description of cause:
FIRST AMEND / PRIOR RESTRAINT / EQUAL PROTECTION / DUE PROCESS

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 4/24/18
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____