IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

| | | |
|---|---|---|
| Brandon Reed, Erick Green, Yafeuh Balogun Shamsid-Deen, Stephen Benavides, Ishmael Muhammad, People's Assembly of Dallas, Commemoration Committee To Honor Roy Williams and Marvin E. Crenshaw, Plaintiffs, | § § § § § § § § | |
| v. | § § § | Civil Action No. 318-CV1032-B |
| Mike Rawlings, In His Official Capacity as Mayor of Dallas, and Scott Griggs, Adam Medrano, Casey Thomas II, Dwaine Caraway, Rickey Callahan, Omar Navaraez, Kevin Felder, Tennell Atkins, Mark Clayton, Adam McGough, Lee Kleinman, Sandy Greyson, Jennifer Gates, Philip Kingston, In Their Official Capacities as Members of the Dallas City Council, Defendants. | § § § § § § § § § § § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT,
APPLICTION FOR INJUCTIV RELIEF, &
MOTION FOR DECLARATORY JUDGEMENT**

### A. PARTIES

1. Plaintiff, Brandon Reed, is a citizen Dallas County, of the State of Texas, and is a member of the Commemoration Committee to Honor Roy Williams and Marvin E. Crenshaw.

2. Plaintiff, Erick Green, is a citizen of Dallas County, of the State of Texas, and is a member of the Commemoration Committee to Honor Roy Williams and Marvin E. Crenshaw.

3. Plaintiff, Yafeuh Balogun Shamsid-Deen, is a citizen of Dallas County, and the State of Texas, is a member of the People's Assembly of Dallas, and the Commemoration Committee to Honor Roy Williams and Marvin E. Crenshaw.

4. Plaintiff, Stephen Benavides, is a citizen of Dallas County, and of the State of Texas, is a member of the People's Assembly of Dallas, and the Commemoration Committee to Honor Roy Williams and Marvin E. Crenshaw.

5. Plaintiff, Ishmael Muhammad, is a citizen of Dallas County, and the State of Texas, a member of the Commemoration Committee to Honor Roy Williams and Marvin E. Crenshaw, and a property owner on Ewing Ave. in Dallas, TX. who seeks to rename Ewing Ave.

6. Plaintiff, People's Assembly of Dallas, is a community-based organization that works on public policy and building economic equity in Dallas. It is based in Dallas County.

7. Plaintiff, Commemoration Committee to Honor Roy Williams and Marvin E. Crenshaw, is a community organization actively working to rename Marilla St. to M. E. Crenshaw Blvd.

8. Defendant, Mike Rawlings, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the Mayor. Fed. R. Civ. P. 4(j)(2)(A)

9. Defendant, Scott Griggs, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

10. Defendant, Adam Medrano, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

11. Defendant, Casey Thomas, II, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

12. Defendant, Dwaine Caraway, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

13. Defendant, Rickey D. Callahan, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

14. Defendant, Omar Narvaez, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

15. Defendant, Kevin Felder, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

16. Defendant, Tennell Atkins, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

17. Defendant, Mark Clayton, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

18. Defendant, Adam McGough, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

19. Defendant, Lee Kleinman, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

20. Defendant, Sandy Grayson, is an officer of the City of Dallas and is being sued in her official capacity. She may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

21. Defendant, Jennifer S. Gates, is an officer of the City of Dallas and is being sued in her official capacity. She may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

22. Defendant, Philip T. Kingston, is an officer of the City of Dallas and is being sued in his official capacity. He may be served by serving the Office of the City Council. Fed. R. Civ. P. 4(j)(2)(A).

## B.  JURISDICTION

23. The Court has jurisdiction over the lawsuit, because the suit arises under Amendments I and XIV, Sec. 1, of the U.S. Constitution. "Congress shall make no law… abridging the freedom of speech...Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  28 U.S.C. § 1331. Gunn v Minton, 133 S. Ct. 1059, 1064 (2013); Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 552 (2005).

## C.  VENUE

24.  Venue is proper in this district under 28 U. S. C. § 1391(B)(2), because all of the events or omissions giving rise to this claim occurred in this district and because all of the property at issue is located in the district. Street names with a Confederate origin are located in this district, and defendant's actions occurred and will occur in this district.

## D.  FACTUAL BACKGROUND

25.  Marilla Street was named by Confederate Chaplain William Ceiton Young ("Young"), a prominent 19th and 20th century minister and neo-Confederate in Dallas, for his mother Marilla Ingram Young.[1]

26.  Young became a minister in 1849 of Methodist Episcopal Church South, the pro-slavery half of the Methodist church when the denomination broke up over slavery before the Civil War.[2]

---

[1] "Memorial and Biographical History of Dallas County, Texas,"  The Lewis Publishing Company, Chicago, 1892, pages 872-875, reference to Marilla on page 873.,
https://texashistory.unt.edu/ark:/67531/metapth20932/m1/959/?q=ingram%20young.
[2] The Southern Methodist Church and the Proslavery Argument, Lewis M. Purifoy, The Journal of Southern History, Vol. 32, No. 3 (Aug., 1966), pp. 325-341

**Plaintiff's First Amended Complaint and Request for Declaratory Judgement**               **Page 5 of 15**

27. In 1865 during the Civil War Young was assigned as a Missionary Chaplain to General W. L. Cabell's ("Cabell") Arkansas Confederate unit. After the Civil War ended, Young moved to Dallas, where he worked within the City of Dallas municipal government on numerous issues, as well as Neo-Confederate groups such as the Sterling Price Camp No. 31.

28. Cabell committed numerous war crimes at during the 1864 Battle of Poison Springs in Arkansas. It was so notorious that African American Union regiments had a battle cry, "Remember Poison Springs". After the battle the 29th Texas Cavalry execution squads, led by Cabell, roamed the battlefield murdering wounded African American soldiers chanting "Where is the First Kansas N***** now? All cut up to pieces and gone to hell." Some were scalped. The captured Union wagons were used in a contest to crush "n***** heads" under the wheels.[3]

29. Young was a member of the Sterling Price Camp No. 31 of the United Confederate Veterans and records show he was actively involved between 1894 and 1917 as leading member.[4]

30. The Sterling Price Camp No. 31 was involved in the erection of the Confederate War Memorial, currently being considered for removal by the Dallas City Council, whose dedication speeches stated that its purpose was to establish the Confederacy as a heroic self-sacrifice for states' rights ideology, which would be employed to prevent any civil rights legislation to protect African Americans.[5]

31. The construction of Dallas City Hall on Marilla St. was completed in December 1977.

32. H. F. Ewing was a Major in the Confederate Army, a member of the Sterling Price Camp No. 31, and was elected the first Mayor of Oak Cliff before annexation by the City of Dallas.[6]

---

[3] Stockley, Griff, "Ruled by Race: Black/White Relations in Arkansas from Slavery to the Present," Univ. of Arkansas Press, 2009, pages 52-53.
[4] Dallas Morning News, Sept. 14, 1894, page 8, in a short notice, "Sterling Price Camp," Dallas Morning News, Oct. 13, 1917, "Confederate Veterans to Have Special Program at Fair," page 2.
[5] https://legacy.lib.utexas.edu/taro/dalpub/08708/dpub-08708.html
[6] Acheson, By Sam. "Oak Cliff Was Naboth's Vineyard." Dallas Morning News, 6 Jul. 1970, Final Edition, D, p. 2. See also, Dreesen, Don, "History of Oak Cliff," which was a serial in the Dispatch-Journal, March 6 – June 22, 1939, and retyped into a bound copy at the Dallas Public Library, 976.428 D771H copy, Installment 13, page 37-38 that street was named after H.F. Ewing.

33. H. F. Ewing, a Confederate leader[7], is the namesake for North Ewing Avenue and South Ewing Avenue in Dallas, TX.

34. The Mayor's Task Force on Confederate Monuments was created on August 18, 2017[8], and was charged with making recommendations on the Robert E. Lee and the Confederate Soldier Confederate Monument, Fair Park art, streets with Confederate names, places with Confederate names, Robert E. Lee Park, and the Confederate Cemetery.

35. On October 17, 2017, The Mayor's Task Force on Confederate Monuments issued street name recommendations seeking to change streets named after a Confederate leader and/or general, who made a significant contribution to the Confederacy, including specifically Gano, Lee, Cabell, Stonewall, and Beauregard streets. The renaming of these streets will be accomplished on a priority basis within 90 days[9].

36. The Commemoration Committee to Honor Roy Williams and Marvin E. Crenshaw ("The Committee") was formed on February 1, 2018 to rename Marilla St. to M.E. Crenshaw Blvd, in order to recognize his contributions in expanding voting rights of all minorities in Dallas, and the creation of the 14-1 City Council system in Dallas.

37. Through historical research, the Committee discovered that Marilla St. was named in honor of Dallas Confederate leader Young's mother, Marilla Ingram Young.

38. On April 11, 2018 during a Dallas City Council meeting, the Committee's research and public testimony was delivered to all Dallas City Council members and the Mayor, detailing Young's history as a Confederate leader, specifically highlighting that Dallas City Hall is now located on Marilla St., and advocating for the change of Marilla St. to M. E. Crenshaw Blvd.

---

[7] "Honoring the Dead." Dallas Morning News, 1 Jun. 1886, Final Edition, p. 5.
[8] http://dallascityhall.com/government/Council%20Meeting%20Documents/a_recommendations-from-mayors-task-force-on-confederate-monuments_combined_110117.pdf
[9] Id.

**Plaintiff's First Amended Complaint and Request for Declaratory Judgement**   Page 7 of 15

39. Between the formation of the Committee, and the date of this complaint, the Committee has, and continues to engage in political and community organizing throughout Dallas at the expense of its members time and financial resources. Those efforts include gathering petition signatures at public and private events, presenting at religious institutions, speaking before the Dallas City Council, and meeting and discussing matters with appointed and elected officials.

40. On April 25, 2018 at 9 a.m., the Dallas City Council convened to consider the prohibition of renaming of streets linked to the Confederacy.

41. On April 25, 2018 at 9 A.M. agenda item No. 34(2), the Dallas City Council passed by a vote of it's members the prohibition of renaming streets in Dallas named after Confederate Generals and/or leaders.
http://dallascityhall.com/government/Council%20Meeting%20Documents/agenda_042518.pdf

42. The April 25, 2018 Dallas City Council Agenda Resolution passed under agenda item No. 34(2), does not specify whether only streets listed in the Mayor's Taskforce of Confederate Monuments Taskforce will be protected by the proposed resolution, or if all Confederate streets throughout the City of Dallas that fulfill the description provided, will also be prohibited from being renamed.

43. On April 25, 2018 at 9 A.M. under agenda item No. 60, the Dallas City Council convened to consider a public hearing to receive comments regarding a proposal to change the [street] name of Unnamed FN3, approximately 1,500 feet east of Coit Road between President George Bush Turnpike and Frankford Road to "Highland Springs Way"

44. Plaintiff, Ishmael Muhammad, a property owner on Ewing Ave. in Dallas, TX. contacted Dallas Mayor Mike Rawlings and City Council Member Dwaine Caraway on May 17, 2018 via email to request the renaming of Ewing Ave., a street named after a Confederate leader, which he finds politically hostile and historically oppressive

45. The Dallas Development Code Art. IX, Thoroughfares, Section(s) 51A-9.300-9.308 provides a uniform process for changing a street name in Dallas.
http://www.dallascityattorney.com/51/ARTICLE%20IX.pdf

46. The street name change process is included and codified under the Dallas' Thoroughfare Ordinance, which requires a public hearing and notice be given to property owners for any proposed amendments.[10]

47. Dallas Development Code Art. IX, Chapter 51A-9.304(c)(1), states that "Historic street names may not be changed."[11]

48. None of the streets listed by the Mayor's Taskforce on Confederate Monuments, nor other streets, including Marilla St. or Ewing Ave., whom fulfill the description provided by the Taskforce, have been subject to the process required to grant historic street status.

## CAUSES OF ACTION

### 1. VIOLATION OF FIRST AMENDMENT RIGHT TO FREE SPEECH BY USE OF CONTENT BASED PRIOR RESTRAINT

49. Article 1, Section 8, of the Texas Constitution and the First Amendment of the U. S. Constitution prohibits the abridgement of freedom of speech. In Texas v. Johnson (1984), the Supreme Court of the United States held that the public burning of the American flag at a political protest was a criminal act that:

"E*xpression may not be prohibited on the basis that an audience that takes serious offense to the expression may disturb the peace, since the Government cannot assume that every expression of a provocative idea will incite a riot, but must look to the actual circumstances surrounding the expression…The Government may not prohibit the verbal or nonverbal expression of an idea merely because society finds the offensive or disagreeable…."*

---

[10] http://dallascityhall.com/departments/transportation/DCH%20Documents/Transportation_Planning/pdf/ThoroughfarePlan.pdf
[11] http://dallas-tx.elaws.us/code/coor_appsid838427_ch51a_artix_d51a-9.300_sec51a-9.304

**Plaintiff's First Amended Complaint and Request for Declaratory Judgement**　　　　　　　　**Page 9 of 15**

50. The State can have no interest in determining the message, or referent of political symbols. By naming streets in honor of oppressors of a large segment of the population, and the Plaintiff's in particular, and then by passing a resolution prohibiting renaming of those streets, the City of Dallas government has engaged in actions that cause harm to the named Plaintiffs, because an audience, here, supporters of Confederacy, takes serious offense to the renaming of those streets.

51. By passing the resolution, the City of Dallas' action constitute **_content based unconstitutional prior restraint on free speech_**. The resolution chills and prohibits the Plaintiff's political speech by disallowing any meaningful participation in the established process to rename a street. Omission of such rights is tantamount to official oppression, as the African American litigants are denied the ability to participate in the process available to all other residents and property owners within the City of Dallas.

52. The Committee, which consists primarily of African Americans and individually named plaintiffs, who are primarily African Americans, all have spent a significant amount of time, monies, and sweat equity in organizing on the issue of changing the names of streets honoring Confederate generals and/or leaders. Their efforts are distinct from the general public because the general public has not spent the time or resources in organizing around the issue of renaming Marilla St. to M. E. Crenshaw Blvd, which makes the Plaintiff's injury and the future injury, distinct and particularized from the general public.
Bray v. Fenves, No. 06-15-00075-CV, 2016 WL 3083539 (Tex. App.—Texarkana Mar. 24, 2016,

53.     Prohibiting renaming of Confederate streets is not government speech.
Monumental Task Comm., Inc. v. Foxx, 157 F. Supp. 3d 573, 594 (E.D. La. 2016), aff'd, 678 F. App 250 (5th Cir. 2017). The government is not taking down or putting up a monument/street, and Plaintiffs are not asking them to do either. Rather, Plaintiffs are engaging in an established municipal process, which includes real individual and organizational political activity. By prohibiting the renaming of confederate streets, the government is not exercising government speech, it is abridging the Plaintiff's. Creating a protected class of streets for Confederate

Generals/leaders is not government speech. The streets were not constructed with the intent to convey a thought or instill a feeling by those who see them. The location and geographic significance of the streets are minimal with the exception of Marilla St.

54. Marilla St. and Ewing Ave. were not included in the Mayor's Taskforce on Confederate Monuments recommendations, and Marilla St. only became public knowledge that they were Confederate streets when the Committee presented the fact to the Dallas City Council on April 11, 2018, and through email to City Council members. There is no mention of historic significance of any confederate streets in Dallas on the city's website.

## COUNT 2. VIOLATION OF DUE PROCESS RIGHTS

55. Renaming streets falls under the Dallas Thoroughfare Chapter, which **mandates** public hearing and notice before any amendment can be made to the Ordinance.[12] No public hearing specifically focused on prohibiting the renaming of all confederate streets has occurred, in violation of the City of Dallas' Rules of Procedure.

"*The [Thoroughfare] Plan serves a number of functions. It is the blueprint that established terminology, standards, and general principles, and guides decision making **for all aspects** of roadway planning, funding, construction, reconstruction, operation, and maintenance*." Creating a protected class of streets falls under at least the operation and maintenance portion of this definition of the plan outlined in the Thoroughfare Plan.

56. Plaintiff's Due process claim is based on their ***liberty and specific property interest*** by denying their ability to engage in a well-established uniform process for renaming streets. The City has no justifiable reason to ignore or violate its own well-established procedure for renaming streets.

---

[12] http://dallascityhall.com/departments/transportation/DCH%20Documents/Transportation_Planning/pdf/ThoroughfarePlan.pdf

## COUNT 3.   VIOLATION OF EQUAL PROTECTION OF LAW

57.     The City of Dallas clearly seems to be treating similarly situated people, i.e. the residents of the City of Dallas, differently, based on the street names they wish to have changed, or named. This is obvious from the fact that the same day the council voted on agenda item #60, which held a hearing to name a street, it at the same time voted on agenda item #34 to prohibit the renaming of confederate streets. This is clearly an equal protection violation, as it discriminates between the residents with equal rights, based on the change they wish to affect.

## COUNT 4: REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION

58.     In determining whether to grant or deny a preliminary injunction, the Court applies a four part test: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. Canal Authority of State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). "A preliminary injunction is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors." Allied Marketing Group, Inc. v. CDL Marketing, Inc., 878 F.2d 806, 809 (5th Cir. 1989) (citing Mississippi Power & Light v. United Gas Pipe Line, 760 F.2d 618, 621 (5th Cir. 1985); Apple Barrel Productions, Inc. v. Beard, 730 F.2d 384, 389 (5th Cir. 1984)).

59.     Failure of the movant to establish any one of the four factors defeats the right to injunction. See Rohoe, Inc. v. Marque, 902 F.2d 356 (5th Cir. 1990). "[E]ven if the varying strengths and weaknesses of each of the four preliminary injunction factors may cross-compensate, this relationship has limits; the movant still must always 'present a prima facie case.'" Monumental Task Comm., Inc. v. Chao, 678 F. App'x 250, 252 n.1 (5th Cir. 2017) (quoting Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C., 710 F.3d 579, 582 (5th Cir. 2013)). "Such a showing is required, because 'it is inequitable to temporarily enjoin a party from undertaking activity which [that party] has a clear right to pursue.'" Id. (quoting Texas v.

Seatrain Int'l, S. A., 518F.2d 175, 180 (5th Cir. 1975)). "We find that concern particularly heightened when a federal court is asked to interfere with a state political sub-division's activity." Id.

60.     Plaintiffs have established that they have standing as property owners on streets named after Confederate Generals/leaders, as African Americans, as members of the Committee and the Assembly, and also as residents of Dallas County and the City of Dallas. Plaintiffs have a right to bring this action to enforce City rules and procedures that all other residents and property owners hold dear.

61.     Irreparable harm is imminent and realized, due to the fact that the City of Dallas has bared the renaming of the streets connected to the confederate Generals/leaders. The Plaintiffs will not be able to continue their mission to rectify the past mistakes of the City of Dallas, and will have to suffer the consequences of constant reminders of the heinous, and murderous legacy of the Confederate past, and will have to participate in a city scheme which forces them to accept names of the streets that are clearly offensive and oppressive to them specifically.

62.     Furthermore, the prior restraint on their free speech, and by the loss of time and money, spent to date in changing Marilla St. and Ewing Ave., has been sabotaged with a vote being taken in violation of the City of Dallas' own well established rules and procedures.

63.     The injury to Plaintiffs is permanent, as their First amendment rights will be chilled, due to the actions by the City of Dallas, and they will continue to suffer harm by being forced to participate in scheme of city street names that is directly hostile to their rights, which amounts to official oppression. The City on the other hand will not be affected by being required to ensure that all streets remain squarely under the established street name process.

64.     This request for preliminary and permanent injunction will serve the public interest, as a majority of the people in the City of Dallas require that rules and procedures be followed by their elected officials, and that all residents and property owners have the ability to participate in public political process regarding important issues.

### E. Jury Demand

65. Plaintiff respectfully demands a trial by jury and will tender the appropriate fee.

### F. Prayer

66. For these reasons, Plaintiff asks that the court issue citations for Defendant to appear and answer, and issue a preliminary and permanent injunction, and set the matter for a permanent hearing that Plaintiff be awarded a judgment against Defendant, for the following:

a. Actual damages;
b. Exemplary damages;
c. Attorneys' fees and expenses;
d. Court costs;
e. Prejudgment and post-judgment interest;
f. Temporary and permanent injunctive relief as requested herein; and
g. All other relief to which Plaintiff may be entitled at law or in equity.


Dated: _____, 2018

                s/Shayan Elahi_____
                Shayan Elahi, Esq.
                State Bar No. 24080485
                6565 N. MacArthur Blvd. Ste. 225
                Las Colinas, TX 75039
                Telephone No: (407)-902-5282
                Facsimile No: (888) 633-8920
                shayan@elahilawfirm.com