UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRANDON REED, et. al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-1032-B |
| | § | |
| MIKE RAWLINGS, et. al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss. Plaintiffs have failed to timely respond and to appear at a hearing in this case. As such, the Court finds that this case should be **DISMISSED** for two independent grounds: failure to prosecute and lack of standing.

## I.

## BACKGROUND

In the summer of 2017, the City of Dallas began considering whether to rename certain streets and other public places currently named for Confederate figures. Doc. 18, Defs.' App., 1. The Mayor appointed a Task Force to investigate and to hold public meetings on the issue. *Id.* at 8. The Task Force was responsible for making recommendations to City Council, which it did. *Id.* at 8, 34–39. On April 25, 2018, City Council, via resolution, voted not to follow the Task Force's recommendations regarding renaming streets, so no street names were changed. *Id.* at 47. According to the City, it did not change the procedure for seeking a street name change. Doc. 17, Defs.' Br. in Supp. of Mot. to Dismiss, 10.

Plaintiffs then filed suit against the Mayor and the City Councilmembers in their official capacities (collectively, "the City"). The crux of Plaintiffs' Complaint seems to be their confusion on whether the City Council Resolution on April 25, 2018, modified the Code and thus prohibits Plaintiffs from renaming streets like Marilla or Ewing. Doc. 6, Am. Compl., ¶ 42. Plaintiffs listed only Ewing and Marilla as streets that concern them, neither of which were submitted for City Council review. *See generally id.* (presenting evidence that Ewing and Marilla were linked to the Confederacy); Defs.' App., 47. Plaintiffs admitted also that—at least prior to April 2018—city ordinances specify a procedure for changing these street names. *Id.* ¶ 45. As the City points out, this street-name change process may be initiated only by: "an owner of property abutting the street," or certain city officials or commissions. Dallas City Code § 51A-9.302(b). According to the Code, a property owner who wishes to initiate the street-name change process must file an application that includes a petition indicating that at least fifty-one percent of the owners of all lots abutting the street favor the name change. *Id.* § 51A-9.303. Only one Plaintiff, Ishmael Muhammad, is alleged to own property on Ewing or Marilla, although mail has not been deliverable to him at his Ewing address. Am. Compl., ¶ 44; *e.g.,* Doc. 31 (certified mail unexecuted). But Plaintiffs have not alleged that Mr. Muhammad initiated the Code's street-name change process. *See* Am. Compl., ¶ 44.

Plaintiffs allege three causes of action against the City: (1) a "violation of First Amendment right to free speech by use of content based prior restraint"; (2) a "violation of due process rights"; and (3) a "violation of equal protection of law." *Id.* at 9–12. Besides their Original Complaint, this Amended Complaint is the only substantive briefing the Plaintiffs have filed in this case, despite receiving an extension of time to respond to the City's Motion to Dismiss. *See* Doc. 35, Defs.' Notice of No Responses, 1–2.

Named in the complaint are five individual plaintiffs and two entity plaintiffs.[1] The Court has only had direct contact with one—Plaintiff Stephen Benavides—through a telephone call on October 5, 2018. The Court has no valid mailing address for two other Plaintiffs—Mr. Muhammad and Brandon Reed. Mr. Muhammad and Mr. Reed were ordered to update their contact information with the Court by October 15, 2018, but have not. *Id.* No Plaintiff has registered with ECF. *See* Doc. 33, Order Setting Status Conf., 2.

In fact, as this case has continued, Plaintiffs have become more elusive and non-communicative. While Plaintiffs were originally represented by counsel, their counsel filed a motion to withdraw on August 6, 2018, which the Court granted on August 7, 2018. Doc. 14, Order Granting Mot. to Withdraw. Since then, Plaintiffs have been proceeding *pro se*. But as mentioned, the contact information they provided through their former counsel is incorrect, and they have not responded to this Court's orders to update that information. And despite a court order to do so, no Plaintiff called the Court to confirm attendance at the hearing. *See* Order Setting Status Conf., 2.

The City filed a Motion to Dismiss based on Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) on August 9, 2018, shortly after Plaintiffs' counsel withdrew and left Plaintiffs to proceed *pro se*. Doc. 17, Defs.' Mot. to Dismiss. Due to the confusion around where the Motion should be served, Defendants refiled it on August 31, 2018. Doc. 20, Am. Doc. In response to an email from

---

[1] On September 4, 2018, the entity plaintiffs (the People's Assembly of Dallas, and the Commemoration Committee to Honor Roy Williams and Marvin E. Crenshaw) were ordered to appear with counsel by October 4, 2018. Doc. 23. They have not done so, and failed to appear at the hearing. This alone would be sufficient to dismiss them from the case. *See Southwest Express Co. Inc. v. Interstate Commerce Comm'n*, 670 F.2d 53, 55 (5th Cir. 1982) ("Corporations and partnerships, both of which are fictional legal persons, obviously cannot appear for themselves personally. . . . [T]hey must be represented by licensed counsel.") (quoting *Turner v. Am. Bar Ass'n*, 407 F. Supp. 451, 476 (N.D. Tex. 1975).

Mr. Benavides, Defendants agreed to not oppose a motion for extension of time to respond and find counsel, which this Court granted on September 7, 2018. Defs.' Notice of No Responses, 2; Doc. 25, Order Granting Mot. to Extend. The deadline for a response was October 4, 2018. Doc. 25, Order. To date, Plaintiffs have failed to respond or request another extension.

On October 15, 2018, the Court held a hearing to address whether any Plaintiff would continue with the case. Not a single Plaintiff appeared, despite both this Court's diligence in procuring their attendance and efforts by Defendants to contact Plaintiffs. For example, the Court telephoned both former counsel and Mr. Benavides. Former counsel had no better contact information for Plaintiffs, and while Mr. Benavides assured the Court that all Plaintiffs had received notice of the Court's orders, he did not provide any updated contact information. The City even attempted to identify a more current address for Mr. Muhammad, and forwarded this Court's order accordingly. Doc. 35, Defs.' Notice of No Responses, 1–2.

Plaintiffs' absence alone warrants dismissal of all claims. In addition, the Court has reviewed the City's Motion to Dismiss and finds that Plaintiffs also do not have standing to bring the claims pleaded. As such, the Court **DISMISSES** the Plaintiffs' claims.

## II.

## LEGAL STANDARD

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of the plaintiff's complaint by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *TF-Harbor LLC v. City of Rockwall Tex.*, 18 F. Supp. 3d 810, 816 (N.D. Tex. 2014) (internal quotations omitted) (reviewing standing). To survive the motion, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (citing *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.

A Rule 12(b)(1) motion to dismiss for lack of jurisdiction can support either a facial or factual challenge to subject matter jurisdiction. *TF-Harbor*, 18 F. Supp. 3d at 817. A facial challenge is one in which a party does not include evidence with its motion, and a court uses the 12(b)(6) standard to assess the plaintiff's pleadings. *Id.* A factual challenge is one in which a party includes evidence. Then "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

### III.

### ANALYSIS

*A. Dismissal Based on Failure to Prosecute*

When a plaintiff fails to respond to a motion to dismiss and fails to otherwise meaningfully participate in a case despite repeated opportunities to do so, the district court is within its discretion to dismiss the case. *Boudwin v. Graystone Ins. Co., Ltd.*, 756 F.2d 399, 401 (5th Cir. 1985) (discussing how a "district court may dismiss *sua sponte*, with or without notice to the parties" a claim for failure to prosecute).

Here, lesser sanctions than dismissal have been pursued, and additional measures would be ineffective. For example, the Court has already communicated an explicit warning to Plaintiffs that their claims could be dismissed through its Order Setting a Status Conference (Doc. 33). Because Plaintiffs have failed to register for ECF, the Court has sent this and other orders to Plaintiffs in an attempt to impress upon Plaintiffs the need to participate in the case. The Court even called Mr. Benavides, who acknowledged that he and his co-Plaintiffs were aware of the repercussions of a

failure to attend the hearing. Still no one attended the hearing nor responded to the City's Motion. As the Fifth Circuit has stated, "even a non-lawyer should realize the peril to her case, when she ignores the necessity to obtain new counsel, ignores numerous notices, and fails to attend hearings and depositions." *Anthony v. Marion County General Hospital*, 617 F.2d 1164, 1169 (5th Cir. 1980).

As such, this Court is warranted in dismissing Plaintiffs' claims for failure to prosecute.

*B. Dismissal Based on Lack of Standing*

Even if this Court did not dismiss based on Plaintiffs' failure to prosecute, dismissal is proper because Plaintiffs do not have standing.

The judicial power of federal courts is limited by Article III of the Constitution. *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315, 318 (5th Cir. 2002). "[T]he Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992)). Constitutional or Article III standing "'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) (quoting *Lujan*, 504 U.S. at 560). Even when standing is not raised by the parties, the Court must, where necessary, raise the issue *sua sponte*. *Collins v. Mnuchin*, 896 F.3d 640, 654 n.83 (5th Cir. 2018) (citing *Ford*, 301 F.3d at 331–32).

The party invoking federal jurisdiction bears the burden of proof in establishing all three elements of Article III standing. *Ford*, 301 F.3d at 332. To satisfy the prerequisites of Article III standing, Plaintiffs must show they: (1) suffered an injury in fact (one that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"); (2) there is a causal connection between the injury and the challenged conduct of the defendants; and (3) the injury will

likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 559-60 (1992). An association has standing to bring suit on behalf of its members only if "its members would otherwise have standing to sue in their own right." *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). Associations that seeks to bring suit in their own right "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). The association's injury must be concrete and demonstrable—something more than simply a setback to the organization's abstract social interests. *Havens Realty Corp. v. Coleman*, 455 US 363, 379 (1982).

"The standing question thus bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). These concepts are often addressed together. *Id.* A claim has not ripened if it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted).

Here, the City argues in its Motion to Dismiss that Plaintiffs do not have standing in large part because they have not sufficiently alleged injury in fact, under neither a facial or factual review. Doc. 17, Mot. Dismiss, 12. Plaintiffs have failed to respond. In their pleadings—the only substantive filings Plaintiffs submitted—Plaintiffs state in a conclusory manner that they "have standing as property owners on streets named after Confederate Generals/leaders, as African Americans, as members of the Committee and the Assembly, and also as residents of Dallas County and the City of Dallas." Doc. 6, Am. Compl. ¶ 60. After reviewing the briefings, the Court finds that Plaintiffs have not demonstrated injury in fact because no actual injury has occurred or is imminent. A review

using the 12(b)(1) standard for factual attacks makes this clear.

With respect to the standing arguments expressly alleged by Plaintiffs, the Committee and Assembly have standing only insofar as at least one of their groups members does. *See* Am. Compl., ¶ 52 (citing *Bray v. Fenves*, No. 06-15-00075-CV, 2016 WL 3083539 (Tex. App.—Texarkana Mar. 24, 2016) (no standing found when appellants asserted that an association had standing to sue on behalf of its members). In addition, only Mr. Muhammad is alleged to own property on a street named after a Confederate leader. Therefore the Court's analysis focuses on whether Mr. Muhammad has standing—if he does not, then no other Plaintiff has standing either.

The crux of Plaintiffs' Complaint seems to be their confusion on whether the City Council Resolution on April 25, 2018, modified the Code and thus prohibits Plaintiffs from renaming streets like Marilla or Ewing. Am. Compl., ¶ 42. But given the evidence presented by the City, this is a false conclusion. The Resolution reads:

> That Dallas streets with names linked to the Confederacy, including Lee Parkway, Gano, Stonewall, Beauregard, and Cabell, shall not be renamed because of the significant residents' opposition on Lee Parkway, the contributions to Dallas of the Gano and Cabell families, and the unclear origins and associations (based on inclusive City of Dallas records and archives) of the Beauregard and Stonewall names.

Doc. 18, Defs.' App. 47. This language does not change the City Code. The City simply decided not to take action on the Task Force's recommendations as to street names. Neither Marilla nor Ewing were considered in the Resolution.

Without the alleged procedural change, Plaintiffs have no case. Plaintiffs themselves acknowledge that at least prior to the City's Resolution, the city ordinances specified a procedure for changing these street names. *Id.* ¶ 45 (citing the relevant Code sections). That procedure may be

initiated only by: "an owner of property abutting the street," or certain city officials or commissions. Dallas City Code § 51A-9.302(b). A property owner who wishes to initiate the street-name change process must file an application that includes a petition indicating that at least fifty-one percent of the owners of all lots abutting the street favor the name change. *Id.* § 51A-9.303. Plaintiffs have not alleged that Mr. Muhammad initiated the street name change process as described in the Code. *See* Am. Compl., ¶ 44. Therefore, Mr. Muhammad's injury is hypothetical, not actual or imminent, because he has failed to even attempt to initiate the proper procedure. Whether he is injured is dependent on future events that may never occur.

Considering these facts—and cognizant of the fact that the party invoking federal jurisdiction bears the burden of proof in establishing all three elements of Article III standing—the Court finds that all three of Plaintiffs' claims fail for lack of standing and ripeness. No First Amendment violation has occurred because, *inter alia*, Plaintiffs are free to seek name changes under the Code. And even if the City had amended its Code to prohibit the renaming of certain streets, the Plaintiffs' Amended Complaint does not explain with particularity what injury has occurred. For example, the Amended Complaint does not explain how the preservation of certain street names prevents the Plaintiffs from expressing their own political view points. *See Patterson v. Rawlings*, 287 F. Supp. 3d 632, 641 (N.D. Tex. 2018) (plaintiff lacked standing for his First Amendment claim because City's removal of a Confederate monument did not prohibit plaintiff from expressing his political viewpoint). There are many cases that stand for the proposition that the presence or removal of the names of Confederate leaders or Confederate symbols on government property does not implicate the First Amendment and nor confer standing. *See, e.g., id.*; *Moore v. Bryant*, 853 F.3d 245, 248, 252–53 (5th Cir. 2017) (holding no standing to contest Mississippi's inclusion of the Confederate flag on its own state flag).

Plaintiffs' due process claim fails as well. *See* Doc. 6, Am. Compl., ¶¶ 55–56 (decrying the lack of procedural due process). Contrary to the Plaintiffs' allegations, the City has not changed the process for amending street names, so no procedural violations have occurred. And Plaintiffs have not provided more than conclusory allegations of a constitutionally protected interest in the City's street names. *See id.* In addition, Plaintiffs' volunteer work with the Assembly and the Committee is insufficient to create a cognizable interest. *See Hale v. Bexar Cty, Tex.*, 342 F. App'x 921, 927 (5th Cir. 2009) (holding that "there is no constitutionally cognizable interest in a volunteer position").

Finally, Plaintiffs' equal protection claim also fails. *See id.* ¶ 57. Plaintiffs point out that on the same day the City Council voted to prohibit renaming streets in Dallas after Confederate Generals and/or leaders, the City Council held a hearing on renaming a different street, "Unnamed FN3." *Id.* ¶¶ 43, 57. Plaintiffs do not allege that the City made a decision about this street, and even if it had, this would be insufficient to give rise to more than a speculative inference that an equal protection violation had occurred.

## IV.

## CONCLUSION

For these reasons, the Court **DISMISSES** the Plaintiffs' claims, and **GRANTS** Defendants' Motion to Dismiss (Doc. 16).

**SO ORDERED.**

**SIGNED: October 19, 2018**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE